UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRINA FREEMAN, Individually and as Chair of the
Irondequoit Commission Advancing Racial Equality,

                                Plaintiff,

             v.

TOWN OF IRONDEQUOIT, et al.,

                              Defendants.

_____

<u>DECISION AND ORDER</u>

22-CV-6136L

> *It is hostile to a democratic system to involve the judiciary in the politics of the people. And it is not less pernicious if such judicial intervention in an essentially political contest be dressed up in the abstract phrases of the law.*
>
> Frankfurter, J., *Colegrove v. Green*, 328 U.S. 549, 553-54 (1946).

Plaintiff, Patrina Freeman, claiming to act individually and as "Chair" of the Irondequoit Commission Advancing Racial Equity ("ICARE"), filed a first amended complaint ("amended complaint") against the Town of Irondequoit and two Town Board members: John Perticone ("Perticone") and Kimie Romeo ("Romeo"). Plaintiff is also a member of the five-person Town Board (the "Board") having been elected in 2019. She is the only Black member of the Board. The amended complaint contains four causes of action. Pending before the Court is defendants' motion to dismiss the complaint. After reviewing the amended complaint and all the

papers filed, and having heard counsel at oral argument on October 19, 2022, I grant defendants' motion, and the amended complaint is dismissed.[1]

## BACKGROUND

Some background is necessary to understand the context in which this lawsuit was commenced. In May 2020, George Floyd, a Black man, was murdered by a member of the Minneapolis, Minnesota Police Department. Because of his death, there were numerous protests and demonstrations throughout the country, including in both the City of Rochester and its suburbs, including the Town of Irondequoit.

In August 2020, then-Town Supervisor David Seeley approached plaintiff about chairing a commission dealing with issues of racial equity in the town. On October 20, 2020, the Board passed a Proclamation creating ICARE (Dkt. #24-1). The Proclamation clearly set forth the purpose and function of ICARE. Considering the claims made by plaintiff, ICARE's actual powers are crucial. ICARE was to "recommend policies, procedures and practices for the Town Board's consideration that [would] make the Irondequoit community more equitable" (*id.*). Further, ICARE was charged with submitting a report of recommendations for the Board "to consider" that would help achieve diversity, equity, and inclusion (*id.*).

---

[1] Defendants moved against the complaint on both procedural and substantive grounds. Regarding the procedural grounds, there were several missteps by plaintiff in prosecuting the action. Plaintiff filed a motion to amend the complaint more than twenty-one days after defendants filed their motion to dismiss (*see* Dkt. #14). Had plaintiff amended her pleading within those initial three weeks, plaintiff could have filed it as of right. *See* Fed. R. Civ. P. 15(a)(1)(B). Nonetheless, the Court indicated at the motion hearing that it would grant plaintiff's motion to amend and apply defendants' motion to dismiss to the amended complaint (*see* Dkt. #22).

During the motion hearing, the Court also raised defendants' argument that the case should be dismissed outright due to improper process (*see* Dkt. #6-2 at 10-11 (stating that the summonses did not contain the Court's seal or Court Clerk's signature)). Defendants withdrew that portion of their motion, stating that, from a practical standpoint, they received all substantive documents and were prepared to proceed.

The Proclamation was signed by all members of the Board, including then-Town Supervisor Seeley, defendants Perticone and Romeo, as well as plaintiff. ICARE was created, members were appointed, and it held meetings. Supervisor Seeley was a strong supporter of ICARE, and he backed plaintiff's efforts to develop practices and protocol.

The Board's ardor and support of ICARE seemed to change during the summer of 2021. Several Board members, specifically Perticone and Romeo, challenged some of the specific items favored by plaintiff concerning the role of ICARE. In her amended complaint, plaintiff references the fact that Board members Perticone and Romeo "changed their position" and declined to approve matters relating to ICARE, including their approval to hire an assistant administrator, and to select the Urban League of Rochester as administrator of a first-time home buyer's program initiated through ICARE. Additionally, plaintiff submitted a preliminary budget for ICARE, but after a "heated debate," the budget was never approved.

To say the least, there was significant disagreement and discussion among Board members as to precisely what ICARE was authorized to do and the extent to which the Board would support matters relating to ICARE that had been suggested and presented by plaintiff. Plaintiff's view as to ICARE's role differed dramatically from that of other Board members. Clearly, plaintiff's view of ICARE's role seemed much broader than the scope of the Proclamation which created it.

Then-Town Supervisor Seeley was instrumental in creating ICARE and was, together with plaintiff, strongly supportive of it and opted for an expansive role. But Seeley, apparently quite suddenly, stepped down from the Board and as Supervisor in August 2021. He was replaced by defendant Perticone as Acting Supervisor. Without Seeley's support, ICARE floundered and plaintiff's advocacy for it was challenged in many respects by other members of the Board. Plaintiff was "dismayed" by the Board's apparent reversal of its support for ICARE.

Some of the particular areas of dispute are set forth in the amended complaint. There was discussion at Board meetings which, regrettably, was at times heated, rancorous, and personal. In November 2021, Supervisor Rory Fitzpatrick was elected. According to the amended complaint, he took an aggressive and hostile view toward ICARE. Plaintiff claims that ICARE's very existence was "in doubt" (Dkt. #14-2, ¶57). Fitzpatrick apparently ignored plaintiff's role as Chair, rejected her argument concerning the Urban League, and sought to generally assert control over all aspects of ICARE. A few months later, in March 2022, this lawsuit was commenced by plaintiff.

## MOTIVATION FOR LAWSUIT

A single sentence in the amended complaint's *ad damnum* clause encapsulates what this case is really about. Plaintiff seeks some monetary relief, but the very first item for relief is for this Court to enter a permanent injunction "enjoining and restraining interference with the operation of I-CARE." Plaintiff shows her true colors here: she wants the Court to stop the Board's negative (in her view) decisions concerning ICARE. That is clearly something that this Court cannot and should not do.

Indeed, even a casual review of plaintiff's amended complaint demonstrates that it is about the threat to ICARE and its goals as well as challenges to plaintiff, the strongest advocate on the Board for ICARE. The bulk of the factual recitations in the complaint relate to ICARE and the Board's about-face posture relative to it. The specific claims in the first cause of action relate to Board members Perticone and Romeo (*id.*, ¶¶63, 64). This claim states that these defendants denied plaintiff and "those whose interests she is responsible for advancing—Black potential homeowners" equal protection. There are many problems with this cause of action, but it is clear,

without doubt, that it relates to plaintiff's claim and belief that these two Board members were adversely affecting plaintiff's activities on behalf of ICARE.

The second cause of action is just as specific and claims the Town condoned the actions of Perticone, Romeo, and "other Town employees" who allegedly "discriminated" against plaintiff and her efforts to develop the work of ICARE (*id.*, ¶66). The third cause of action alleges that the individual defendants and the Town interfered with ICARE's ability to contract and plaintiff's ability to function as ICARE's Chair because she is Black. Plaintiff claims that these acts violated 42 U.S.C. § 1981 and § 1983.

No matter how these claims are clothed, they clearly are designed to seek judicial intervention to correct and rectify the Board's negative actions involving ICARE. Defendants have contended from the outset that this lawsuit is not truly about any violation of a constitutional right, but rather plaintiff's attempt to use the Court to advance her legislative agenda that has, to some extent, been derailed by the Board or some members of it. Defense counsel's opening argument before the Court on October 19, 2022, emphasized that this judicial venture by plaintiff was nothing more than her attempt to challenge the Board—in a lawsuit—because the Board failed to vote her way and support the ICARE program in the manner she believed appropriate. Counsel emphasized the "political" nature of the case in which plaintiff seeks to obtain by lawsuit that which she could not achieve in the legislative forum. These arguments were also set forth in writing in defendants' brief on the motion to dismiss (Dkt. #6 at 7).

A review of all the matters before the Court suggests that defendants' contention as to the nature of the case is, indeed, accurate. Such a tact is not proper. Plaintiff essentially requests that the Court act as a super legislature and enjoin what plaintiff believes is the Board's "interference" with the operation of ICARE. This is not the proper role for a federal court. Plaintiff's claims,

which purport to raise constitutional issues, are really masquerading as a challenge to political disputes about policy, which is a matter for legislators and not the courts.

Of course, this Court does not have, and cannot have, an opinion on political disagreements that are meant for legislators and town governments to resolve. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 438 F. Supp. 2d 291, 295 (S.D.N.Y. 2006) ("The political question doctrine calls for a careful and delicate analysis into whether a 'matter has been committed by the Constitution to another branch of government or whether the action of that branch exceeds whatever authority has been committed.'" (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962))); *D'Amico v. Waste Mgmt. of N.Y., LLC*, 2019 WL 1332575, at *16 (W.D.N.Y. Mar. 25, 2019) ("Political questions are those that lie beyond the competence and proper institutional role of the federal courts." (internal quotation marks and citation omitted)).

This Court cannot act as plaintiff's partner in advancing the laudable goals envisioned by the creation of ICARE. As it often is with general programs, the devil is in the details.


**MOTION TO DISMISS**

Although the motivation for filing the complaint and the evident "political" nature of it are clear, nonetheless, plaintiff claims constitutional violations relying on 42 U.S.C. § 1981 and § 1983 against plaintiff and, apparently, against those who might benefit from ICARE's programs. The Court, therefore, must examine each claim as pleaded to determine if plaintiff has stated a viable claim—a plausible claim—on the facts alleged and the law. In my view, plaintiff has failed to do so for several reasons, and, therefore, dismissal is appropriate and proper.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the . . . constitutional power to adjudicate it." *Makarova v. United*

*States*, 201 F.3d 110, 113 (2d Cir. 2000). In deciding whether to dismiss an action under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citations omitted), *aff'd*, 561 U.S. 247 (2010). Usually, as in this case, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *GE Inv'rs v. Gen. Elec. Co.*, 447 F. App'x 229, 230 (2d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The court need not accept conclusory allegations or draw unreasonable inferences, however. *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019); *Schorr v. Dopico*, 205 F. Supp. 3d 359, 363 (S.D.N.Y. 2016), *aff'd*, 686 F. App'x 34 (2017).

To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Although the plaintiff is not required to plead "specific evidence," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010), she must present more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### THIRD CAUSE OF ACTION: § 1981 CLAIM

All of plaintiff's claims reference ICARE or its initiatives, but only this third cause of action claims to be brought on behalf of ICARE itself (Dkt. #14-2, ¶67; Dkt. #23 at 1). At the hearing on the motion to dismiss, the Court questioned ICARE's standing and plaintiff's capacity to bring a claim on its behalf. At the Court's direction, the parties filed supplemental briefs on the issue (Dkt. ##23, 24, 25, and 26). I conclude that this claim must be dismissed for lack of subject matter jurisdiction and, alternatively, for failure to state a claim. No claim may be maintained on behalf of ICARE as a separate entity.

Plaintiff suggested that she, as Chair, has the right to bring a claim on behalf of ICARE because ICARE is an unincorporated organization. But this is not so. I accept defendants' contention that ICARE is simply an advisory committee created by Proclamation to give advice to the Town Board. Advice and recommendations that the Board was free to accept or reject.

In other words, ICARE has no separate, legal existence and, therefore, there can be no Article III case or controversy. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 384 (2d Cir. 2021) ("'[T]he most elemental requirement of adversary litigation is that there be two or more parties,' meaning that '[a]bsent a plaintiff with legal existence there can be no Article III case or controversy.'" (quoting *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 787 (4th Cir. 2019))), *cert. denied*, 142 S. Ct. 757 (2022). Therefore, resolution of this issue affects this Court's jurisdiction to hear the claim.

8

Plaintiff has the burden of demonstrating subject matter jurisdiction by a preponderance of the evidence. *See Fund Liquidation Holdings LLC*, 991 F.3d at 384. And plaintiff's own allegations—that the Board appointed ICARE's leadership and has authority over ICARE's budget (Dkt. #14-2, ¶¶35, 52)—significantly weaken her contention that ICARE is its own legal entity. *Compare with Craine v. NYSARC, Inc.*, 88 A.D.3d 1105, 1106-07 (N.Y. App. Div. 2011) (finding that though defendant exercised significant oversight and supervision, plaintiff was a separate entity because there were "markers of autonomy" such as the right to elect officers, a separate federal employer identification number, separate fiscal reports and bank accounts, and programs operated from plaintiff's own revenues).

Therefore, after weighing the evidence and plaintiff's own allegations, the Court concludes that plaintiff has failed to meet her burden by a preponderance of the evidence and dismisses this claim for lack of subject matter jurisdiction.

Moreover, even if the Court were to find that ICARE has standing—and separately, that plaintiff has the capacity to sue on its behalf—the Second Circuit has made clear that "§ 1981 does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018); *see also Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019) (noting that this preclusion includes Section 1981 claims brought against individual defendants in their individual capacities). Therefore, even if the Court did not dismiss this claim for lack of subject matter jurisdiction, it would dismiss the third cause of action for failure to state a claim.

### FIRST CAUSE OF ACTION: EQUAL PROTECTION

In her first cause of action, plaintiff contends that defendants Perticone and Romeo "sought to deny [her], and those whose interests she is responsible for advancing—Black potential homeowners—of equal protection of the law" (Dkt. #14-2, ¶63). It is hard to imagine anything more vague or illusory. Advancing the claim on behalf of "Black potential homeowners" is not sustainable. There is no such legally identifiable group.

Ordinarily a plaintiff may assert only her own legal rights, not those of third parties. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). The parties here did not raise concerns about standing with respect to this first cause of action; nevertheless, the Second Circuit permits the district court to raise, *sua sponte*, both constitutional and prudential standing concerns. *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015); *see also Weinberg v. Village of Clayton*, 2018 WL 4214363, at *16 n.28 (N.D.N.Y. Mar. 21, 2018).

Plaintiff's claim here asserts that Perticone and Romeo denied plaintiff equal protection under the law. The amended complaint is silent as to essentially what type of equal protection claim is advanced. The amended complaint gives no notice, and one is left to speculate. It is, of course, plaintiff's burden to show a plausible claim, and this pleading accomplishes little in that regard.

At oral argument on the motion on October 19, 2022, plaintiff's counsel had great difficulty answering the Court's questions concerning the precise nature of this claim. Plaintiff's counsel now contends that this cause of action presents a claim that plaintiff was subjected to a hostile work environment based on race. This, of course, is not mentioned or pursued in the amended complaint or any of plaintiff's papers opposing the motion to dismiss, although it was referenced

in plaintiff's reply in support of the motion to amend (Dkt. #18 at 14-16). Plaintiff appears to seek the Court's help in dredging up a claim where none has been specifically pleaded.

"Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, protect[s] public employees from various forms of discrimination, including [a] hostile work environment . . . on the basis of race." *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015) (internal quotation marks and citation omitted). Defendants, though, dispute whether plaintiff, an elected official, is a "public employee." In support of their position, defendants cite the statutory definition of "employee" under Title VII (Dkt. #16-2 at 7 n.1), which excludes elected public officials, 42 U.S.C. § 2000e(f). This authority suggests that plaintiff may not be able to advance this claim at all. The Court, however, need not resolve the matter because, on the facts here, the Court dismisses the hostile work environment claim on the merits.

A Section 1983 hostile work environment claim requires a plaintiff to demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (internal quotation marks and citation omitted). Additionally, the plaintiff "must show that the discrimination [based on a protected characteristic] was intentional." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2014). "[W]hen a plaintiff alleges that multiple individual defendants have engaged in uncoordinated and unplanned acts of harassment, each defendant is only liable under § 1983 when his [or her] own actions are independently sufficient to create a hostile work environment." *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014).

Plaintiff's own characterization of her colleagues' actions as a "series of petty slights" (Dkt. #15 at 14) severely weakens her claim. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70,

76 (2d Cir. 2010) (noting that while comments "could be deemed unrefined or uncivil, Title VII simply does not set forth a general civility code" (internal quotation marks and citation omitted)); *see also Naumovski v. Norris*, 934 F.3d 200, 221 (2d Cir. 2019) (noting that the "*level of severity* to demonstrate a hostile work environment is similar" under Section 1983 and Title VII even though the claims differ in other respects).

Moreover, plaintiff has also failed to adequately allege that any such hostile work environment was racially motivated. *See Walker v. Triborough Bridge and Tunnel Auth.*, 2021 WL 5401483, at *5 (S.D.N.Y. Nov. 18, 2021) (noting that to state a Title VII hostile work environment, the plaintiff must allege that "discrimination is a motivating factor in the mistreatment" but that "[b]ut-for causation is required for Section 1983 hostile work environment claims").

In fact, as to Perticone, plaintiff's allegations: (1) have nothing to do with race; (2) specifically attribute Perticone's actions to something other than race; or (3) are based solely on her own unsupported beliefs.

For example, plaintiff alleges that Perticone opposed the hiring of an assistant for ICARE and later stated that he was going to assert control over ICARE (Dkt. #14-2, ¶¶43, 51). These allegations fail to include any reference to race. The most plaintiff can argue is that she, a Black woman, was chair of ICARE and that Perticone's opposition and statement inhibited her goals. But "it is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened *because* the person is a member of that racial group." *Williams v. Calderoni*, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012), *aff'd*, 529 F. App'x 89 (2d Cir. 2013). Likewise, much to counsel's disappointment, the Court cannot plausibly infer that simply because ICARE sought to achieve equity among all races (Dkt. #14-2,

¶32), Perticone's opposition to some of its recommendations or initiatives was racially discriminatory.

Both Perticone and Romeo took positions concerning ICARE that were contrary to plaintiff's preference. It is evident that the interactions among the parties at Board meetings and otherwise were contentious and at times lacked the civility that one would expect of elected officials. But politics at every level is tough business and disagreements as to how to implement programs are not uncommon. This does not mean that the disagreements are racially discriminatory. Plaintiff has failed to establish a plausible claim, if, in fact, she seeks to advance a hostile work environment claim. Therefore, to the extent plaintiff's first cause of action pertains to violations of her own rights, it is dismissed pursuant to Rule 12(b)(6). Plaintiff's first cause of action is dismissed.

## SECOND CAUSE OF ACTION:
## CLAIM AGAINST THE TOWN OF IRONDEQUOIT

Plaintiff seeks to hold the Town liable for actions of Board members Perticone and Romeo, "and other town employees." This claim fails. A municipality may not be liable under the theory of *respondeat superior*. Rather, a plaintiff must demonstrate that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Specifically, the plaintiff must allege that her constitutional rights were violated as the result of an official municipal policy or "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "[O]nly those municipal officials who have final policymaking authority [in the specific context raised] may by their actions subject the government to § 1983 liability." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d. Cir. 2000) (internal

quotations marks and citation omitted). Plaintiff claims that the Town is liable because some of Perticone's actions occurred while he was serving as Acting Supervisor. Plaintiff also alleges that the Town generally condoned Perticone's, Romeo's, and the various police officers' actions that discriminated against her or were designed to intimidate her. The Court has discussed above the issues with plaintiff's claim of a hostile work environment, and that discussion applies here as well. This claim cannot proceed on that theory either. Plaintiff has failed to adequately allege by pleading specifically that defendants' actions were racially motivated.

The amended complaint and plaintiff's papers on the motion attribute every single dispute with defendants to racial animus. Plaintiff repeatedly asserts her belief that defendants' contrary positions on issues were only because she is a Black woman. The reference to her being a Black woman is repeated many times. Sadly, I surmise that plaintiff actually believes this to be the case; she believes that every single decision of defendants that adversely affected her and ICARE was racial—because she is a Black woman.

First, it is clear in matters of this nature that a plaintiff's subjective belief about a defendant's state of mind or motive is not enough to establish a plausible cause of action. *See Liu v. Queens Library Found, Inc.*, 2017 WL 4217121, at *9 (E.D.N.Y. Sept. 20, 2017) ("[T]here is nothing other than Liu's subjective interpretation to support that this comment was directed at her race/national origin."); *Shepherd v. BCBG Max Azria Grp., Inc.*, 2012 WL 4832883, at *17 (S.D.N.Y. Oct. 11, 2012) ("Van Dillon's comment that Shepherd did not look 'Madison Avenue' does not clearly refer to race, and Shepherd's own belief that this remark was motivated by discrimination will not suffice to establish the required inference."), *adopted by* 2012 WL 6150854 (S.D.N.Y. Dec. 10, 2012).

Second, plaintiff's beliefs here also fall prey to the *post hoc ergo propter hoc* fallacy: that just because something followed an event, it must have been caused by the preceding event. Since event Y followed event X, event Y must have been caused by event X. Here plaintiff is Black, and events occurred after that fact was established and, therefore,—or so plaintiff believes—the subsequent negative events were caused because she is Black. *See Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 129 (N.D.N.Y. 2019). Such reasoning is not sufficient to establish a plausible cause of action.

### FOURTH CAUSE OF ACTION:
### DEFAMATION CLAIM AGAINST DEFENDANT ROMEO

Plaintiff asserts, in two sentences, that Romeo made a false report concerning plaintiff and that defamed plaintiff.

Having dismissed plaintiff's federal claims, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's New York State law defamation claim. *Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) ("'A district court's decision whether to exercise [] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.'" (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009))).

In coming to this conclusion, the Court has balanced the traditional "values of judicial economy, convenience, fairness, and comity" and has considered the Supreme Court's guidance that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, plaintiff's "federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources." *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006). Specifically, the case has been pending less than a year and has not proceeded past the pleadings stage. Moreover, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Kolari*, 455 F.3d at 123 (discerning "no extraordinary inconvenience or inequity occasioned by permitting the claim[] to be refiled in state court"). For these reasons, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's defamation claim.

## CONCLUSION

For the reasons stated above, the Court grants defendants' motion (Dkt. #6) and dismisses plaintiff's amended complaint (Dkt. #14-2) in its entirety. The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 23, 2023.

16